# Devlin *v.* Milk Control Commission of Pennsylvania, Appellant.

Argued December 10, 1943.   Before KELLER, P. J., BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.   (RENO, J., absent).

420

*Frank E. Coho* and *Henry M. Bruner,* Deputy Attorney General, with them *Henry L. Shepard,* Assistant Deputy Attorney General, and *James H. Duff,* Attorney General, for appellant.

*Herbert A. Barton,* with him *Swartz, Campbell & Henry,* for appellee.

OPINION BY KELLER, P. J., March 3, 1944:

The Milk Control Commission has appealed from the amended order of the court below, which affirmed the order of the commission, in so far as it revoked the license of John J. Devlin, trading as Langhorne Dairy, but disapproved and ordered to be revoked so much of it as ordered the said milk dealer to pay to the commission the sum of $1,397.14 to be "applied" by it to the milk producers to whom, it found, he had made underpayments *aggregating* that amount, but not finding the amount due each producer.

The order of the commission is claimed to have been based on sections 510, 511 and 1101 of the Milk Control Law of April 28, 1937, P. L. 417, as amended by Act of July 24, 1941, P. L. 443, in connection with section 1

of General Order No. B-1 (promulgated by the commission on May 24, 1937) regulating the production, marketing and distribution of milk and milk products, etc., which reads as follows: "UNACCOUNTED FOR MILK. All milk not accounted for by a milk dealer's records shall be presumed to be Class I milk and producers shall be paid for such milk accordingly."

The court below held, in substance, that the Milk Control Law does not create a presumption or delegate a power to the commission to indulge in the presumption, that unaccounted for milk shall be of a particular grade; and that nothing in the act and its supplements and amendments gives the commission any power to legislate upon, establish or change rules of evidence and proof; and that the commission, being an administrative rather than a legislative body, must have a clear grant of authority from the legislature before it can establish any such presumption, even in a proceeding not in the course of the common law.

In reply to the contention of the commission that the constitutionality of section 1 of General Order No. B-1 had been sustained by the Court of Common Pleas of Dauphin County in the case of *L. A. Sterrick v. Milk Control Commission,* 126 Commonwealth Docket 1937, the court below stated: "The issues involved in that proceeding were distinctly different from those herein, and, in the absence of a supporting opinion discussing the issues and the reasons for the court's action, we are at a loss to know whether the particular question herein involved, as to the power of the Commission to issue General Orders establishing rules of evidence and proof and what shall constitute a prima facie case, was called to the court's attention."

An examination of the grounds on which the constitutionality of section 1 of General Order B-1 was attacked in the *Sterrick* case, as contained in appellant's brief, page 11, fails to show that they included

any reference to the provision in section 7 of Article III, prohibiting the passage of any special law, "changing the rules of evidence in any ...... inquiry before courts ...... or other tribunals"; and if that question was not raised before the Dauphin County Court, its per curiam order would not be conclusive as to a ground not raised nor before it for decision.

However, it is not necessary for us to decide that matter, for a review of the Milk Control Law and its supplements and amendments fails to disclose to us any grant of authority to the commission, in circumstances similar to this case, to make *any order requiring the milk dealer,* whose license has been revoked *to pay to the commission* any money to be distributed by it to the milk producers to whom the dealer made underpayments. Section 510 of the amended act provides: "Effect of Order by Commission.—If, by valid formal order refusing, suspending or revoking a license, after hearing with due notice to all those liable on the *bond, the commission has found a milk dealer or handler to be indebted thereunder,* such order and the findings of fact in support thereof *shall be conclusive evidence of the amount due under such bond in a suit thereon by the commission,* unless an appeal therefrom is pending and a supersedeas granted." (Italics supplied).

The commission is empowered in section 509 to sue on the bond on behalf of producers, which suit may be brought in the name of the Commonwealth upon relation of the commission or of the Attorney General, in such manner as debts are now by law recoverable. And by section 511, the commission is directed to "prescribe the procedure for the payment, out of the proceeds of any bond or collateral required by this article, of the amounts found due to producers or handlers or dealers, based on sales or deliveries of milk by them to a milk dealer or handler who has posted a bond or collateral: Provided, however, That if the proceeds of a bond or of

collateral which has been posted by a milk dealer or handler shall be insufficient to pay in full the amounts due to producers who have sold or supplied milk to such milk dealer or handler, the moneys available shall be divided pro rata among such producers."

By these provisions of the act, the commission was authorized, in any valid order revoking the milk dealer's license, entered, after hearing, with notice to the principal and surety on the bond, *to find the amount that the milk dealer was indebted, under the bond, to each or any named producer, handler or other dealer,* which findings would be conclusive evidence of the amounts due such producer, etc. by the milk dealer in any suit by the commission on his bond. But no authority was given in the act to include in its order, revoking the license a further *order* directing the milk dealer *to pay money* to any milk producer, or *to pay to the commission* any sum found due by him to milk producers, etc. for distribution among them.

The act contemplates the *finding* by the commission of *specific sums due* by the milk dealer to the several producers, etc., separately, not a lump sum owing to all his producers as a class. But payment is to be enforced by an action on the bond, *as debts are by law recoverable,* not by an order of the commission to pay money, failure to obey which might entail fines, penalties and even imprisonment, following summary proceedings, prosecution for misdemeanor, or decree in equity, under sections 1001-1004 inclusive.

The remedy for recovery of any money due by the appellee to milk producers—none of whom has here complained that he owes them anything, and who seem to be satisfied with their dealings with him—is by an action on the bond, to recover, in the name of the Commonwealth, the aggregate of the respective amounts found to be due by him to the eight producers from whom he bought milk, not exceeding the amount of the

bond; not by a summary order requiring him to pay the commission a lump sum for allocation among such producers.

If the amount due the producers respectively has not been *conclusively* established by a finding or findings of fact in the order revoking the license, it can be determined, as other debts are, in an action on the bond.

The appeal is dismissed at the costs of the appellant. Judge RENO took no part in the consideration or decision of this case.