## Individual Dairies, Inc., v. Milk Control
## Commission

*John J. Gilbride, Jr.*, for appellant.
*William F. Schutte*, for Milk Control Commission.

KUN, J., May 26, 1944.—Individual Dairies, Inc., filed an appeal from an order of the Milk Control Commission revoking its license, under the Milk Control Law of April 28, 1937, P. L. 417, as amended by the Act of July 24, 1941, P. L. 443. We note that the appeal was filed in this court as of March term, 1943, but was not argued before the court until May 23, .

1944. We have not been advised of the reason for this long delay of a matter which it seems to us should have been presented to the court promptly after the appeal was filed. The commission found as a fact that the dealer had "failed to account and make payment for milk purchased from milk producers during the period from December 1, 1941, up to and including March 31, 1942, in accordance with official general orders of [the] commission, resulting in underpayments to the milk producers for said period in the amount of $5,-913.67". Of the total shortage it was disclosed that $3,430.92 was due to underpayments to the producers and $2,482.75 was due to unaccounted-for butter fat, that is to say, the dealer having no record of disposition of that amount of milk received from producers, in which case by section 1 of its official general order B-1 the milk is "presumed to be Class I and producers shall be paid for such milk accordingly". A great deal of the discussion was directed to the validity of this regulation, it being argued on behalf of appellant that this somehow changed the rules of evidence, which the board had no authority to do. It is to be noted that under the general order referred to unaccounted-for butter fat is not fixed as class I, but the order merely provides that it shall be so presumed. The dealer is, of course, entitled to notice and a hearing on the subject and can present to the commission evidence from which a finding can be made that the unaccounted-for butter fat was actually utilized in other categories. There are many situations in which presumptions are permissible in the law, arising out of necessity and because of the better availability of proofs on the part of the other litigant. For instance, while the burden of proof is on the plaintiff in every kind of case, yet in the case of derailment of a train in which one is injured the presumption is allowed that it was due to the negligence of the carrier, and unless the absence of negligence on its part is satisfactorily proven a ver-

dict for the injured passenger is sustainable on the presumption referred to alone. In a suit for a damaged shipment, claim may be made against the last or delivering carrier and the presumption is allowed that it was the one liable, likewise on the theory that it is in a better position to prove the facts and show at what point in the line of connecting carriers the damage occurred. Even in the criminal law, under which a defendant charged with crime is presumed to be innocent and cannot be convicted until proven guilty beyond a reasonable doubt, one in possession of a concealed deadly weapon may be found guilty on proof of that fact alone, because under the express terms of the statute relating to the subject the jury is permitted to infer the unlawful intent on the part of defendant from the mere fact of his possession of the weapon, even though evidence to the contrary may be produced: Commonwealth v. Bruno, 82 Pa. Superior Ct. 388. There are many such instances in both the civil and the criminal law. When we speak of such presumptions, what we really mean is that there is a shifting of the burden of proof to the one in a better position to produce evidence on the matter in controversy.

In the milk industry, a farmer or producer delivers the milk to the dealer without knowing what he is going to receive for it. The dealer is under a duty to pay the farmer eventually for the milk according to its utilization. The duty of the Milk Control Commission is to protect the farmer from fraud or underpayment in this respect. Section 701 of the Milk Control Law requires the dealer to keep records to show the amount of butter fat which he receives and how it has been utilized, which is the basis upon which he must pay the farmer. If the dealer has some kind of record of the utilization of the butter fat, it may be run out to ascertain whether the record is accurate. It must be obvious, however, that if he has no record whatever of the utilization of the butter fat there is no possible

way for the farmer or the Milk Control Commission to ascertain precisely in what manner the unaccounted-for butter fat was utilized. The dealer alone is in a position to present the evidence of that. Accordingly, the regulation of the Milk Control Commission provides of necessity that in the case of unaccounted-for butter fat it shall be presumed to be class I grade, which merely means that that is the starting point for the inquiry, it being available to the dealer to present proofs of its actual utilization; but if no proofs are presented by the dealer the result is as in many similar legal situations: the presumption furnishes the basis for the inference of fact that it was class I butter fat. A denial of this perfectly sensible and just procedure on the part of the Milk Control Commission would amount to a frustration of this most salutary piece of legislation in one of its most vital aspects, to wit, to protect the farmer against fraud on the part of the dealer. We do not understand how the regulation of the Milk Control Commission in this respect in any wise changes any rule of evidence.

We have discussed this matter only because it was so earnestly argued on both sides on this appeal. The point is, however, not directly before us. Regardless of whether the amount of unaccounted-for butter fat was properly fixed under the regulation referred to, there is the finding of the commission, as already stated, of underpayments by the appellant dealer to the farmers and the producers amounting to $3,430.92, which appellant cannot successfully litigate by its contention that it paid the farmers under its contracts with them and obtained releases. The commission having fixed the prices at higher rates, the contracts with respect thereto are ineffective, as are also the releases, to prevent the applicability of the statute: Zeuger Milk Co. v. Pittsburgh School District, 334 Pa. 277, in which the well-known principle was repeated (p. 280) :

" '. . . All contracts made with reference to any matter that is subject to regulation under the police power must be understood as made in reference to the possible exercise of that power. . . .' "

The fact of unaccounted-for butter fat was not litigated by appellant, which merely raised the question of the propriety of the determination of the amount due therefor. It follows that, either on the ground of underpayments or unaccounted-for butter fat, or both, the commission had full power to revoke appellant's license, and that is all that its order included.

The principal attack by appellant was on a statement made in the "discussion" filed in the proceeding by the commission, but which is in no sense a part of its order, to the effect that if appellant should pay to the commission the amount of the underpayments for the benefit of producers the commission would consider revoking the order. As a purely technical matter, if an authority has a certain power there seems to be no reasonable objection to its exercise of that power on terms or, in exercising it, to indicate terms upon which it may modify it or give relief therefrom. However, this may not be the best policy to pursue, and it is perhaps better for the commission to follow the ruling in Devlin v. Milk Control Commission, 154 Pa. Superior Ct. 419, in which it was pointed out that under section 510 of the amended act, after revoking a license, it may make a finding after hearing on due notice of the amount a dealer or handler is indebted under his bond, which shall be conclusive evidence of the amount due "under such bond in a suit thereon by the commission". In the case cited the commission fell into the error of ordering the milk dealer whose license was revoked to pay to the commission the amount of the underpayments for distribution by it to those entitled thereto. That part of the order of the commission was reversed by the common pleas court, whose action was sustained

by the Superior Court. It is to be noted that in the instant case no such direction to pay was included in the order of the commission revoking the dealer's license.

Accordingly the appeal is dismissed.