## Deger v. Milk Control Commission

*Edward M. Hawes,* of *Wright, Mauck & Hawes,* and *Elmer E. Harter, Jr.,* for appellant.

*Paul P. Wisler,* for Milk Control Commission.

KNIGHT, P. J., August 21, 1944.—This is an appeal by Harry G. Deger, trading as Deger's Dairy (hereinafter referred to as appellant), from an order of the Milk Control Commission of the Commonwealth of Pennsylvania (hereinafter referred to as the commission), filed July 16, 1942, and amended May 3, 1944, whereby the commission pursuant to a citation duly issued and served refused to issue to appellant a dealer's license for the year May 1, 1942, to April 30, 1943, inclusive.

This order was based on a finding by the commission that appellant had failed properly to account and pay for milk purchased from a large number of his producers, which underpayments aggregated $4,198.86. The citation was not issued upon the recorded complaint of any of the producers, none of whom appeared in the proceedings, but by the commission apparently of its own volition after an examination by its investigators of appellant's books and records.

The alleged underpayments as found by the commission were of two varieties: (1) Improper payment for "unaccounted-for" milk; (2) improper deduction of 25 cents per hundredweight for all milk sold by appellant in Philadelphia.

With respect to the unaccounted-for milk or butter fat the commission charged appellant with having utilized the same in class 1 (milk for fluid consumption), while appellant had paid the producers for the unaccounted milk at the lower price of class 3 (butter), the lowest class for which he had utilization.

The commission's action was based on section 1 of its order B-1, which provides: "Unaccounted-for milk. All milk not accounted for by a milk dealer's records shall be presumed to be class 1 milk and producers shall be paid for such milk accordingly."

This section of order B-1 was thoughtfully considered in the case of Devlin v. Milk Control Commission, C. P. of Bucks County, April term, 1942, no. 40, and there the court said:

"The presumption that 'unaccounted-for milk' is class 1 milk, which is milk of the highest class, is a so-called presumption of fact, which, in reality, is not a presumption at all. It is a mere inference which must be based upon evidence or drawn from a fact which is proved. We have looked in vain in the record to find any evidence produced before the examiner or the auditor from which it could be ascertained that all of the milk received from producers and disposed of by

defendant came within the classification of class 1 milk."

The same court, after a reargument, held that the commission had no power to indulge in such a presumption or to legislate upon, establish, or change rules of evidence and proof.

The judgment of the Bucks County court was affirmed by the Superior Court in Devlin v. Milk Control Commission, 154 Pa. Superior Ct. 419 (1943), but the Superior Court did not pass upon the question before us, and specifically stated that it was not passing upon it.

In Individual Dairies, Inc., v. Milk Control Commission, C. P. No. 1 of Philadelphia County, March term, 1943, no. 837 (decided May 26, 1944), Judge Kun takes an opposite view from Judge Keller in the Bucks County case and holds that general order B-1 is a valid exercise of the powers of the commission. We are inclined to the Bucks County view of the question. The examples cited by Judge Kun are instances in which the fact-finding body is permitted to draw inferences from certain proven facts. This is different from arbitrarily raising a presumption. Under the law and rules of the commission a milk dealer must keep proper records, and if these are kept the unaccounted-for milk would be explained. If such records are not kept the dealer's license may be refused or revoked, which was done in the Bucks County and Philadelphia County cases. In the present case the commission in its discussion says that "the testimony shows that the unaccounted-for butter fat is almost negligible". For this reason we will refrain from further discussion of the question.

We now come to the second and from the standpoint of amount the more important type of alleged underpayment. The question as to this arises because over the period involved, from March 1, 1941, to December 31, 1941, appellant deducted from the established mini-

mum price of milk purchased a distance allowance or differential of 25 cents per hundredweight. He did this on the theory that his plant, which is located outside the city and 27½ miles from City Hall in Philadelphia, performs the functions of a country receiving station as well as that of a bottling and/or processing plant, and therefore should be entitled to such an allowance by virtue of the provisions of the commission's order A-29 (in effect up to July 25, 1941) and order B-73 (effective after July 25, 1941).

Section 3 of order A-29 fixes the price of class 1 milk to be paid producers at $2.98 per hundredweight f. o. b. the dealer's processing or bottling plant within the corporate limits of Philadelphia or his country receiving station located less than 25 miles from City Hall. If the dealer's plant is outside Philadelphia but within 25 miles of City Hall, a deduction of 10 cents per hundredweight is allowed.

The same section also allows deductions for certain specified receiving stations enumerated in schedule A, and likewise in schedule B provides deductions for receiving stations not mentioned in schedule A but located according to mileage zones. Under schedule B a dealer whose receiving station is located from 25 to 40 miles from City Hall would be entitled to a deduction of 31 cents per hundredweight. In other words dealers included in this class were required to pay producers $2.67 per hundredweight. Appellant paid $2.73 or $2.98 less 25 cents. The figures just cited are all for class 1 milk under order A-29. Similar procedure was used for milk in class 2 and 3, and the same holds true of the procedure after order B-73 became effective.

The commission contends that appellant's plant is not a receiving station but merely a bottling and/or processing plant, and consequently is not entitled to any transportation differential or allowance at all. The commission did, however, for some reason which does not clearly appear, voluntarily allow a 15-cent dif-

ferential in calculating what it alleges are underpayments.

Thus the question narrows down to whether or not the appellant's plant was a country receiving station. If it was a country receiving station, there was no underpayment and the appeal would have to be sustained. Appellant contends that he performs the functions of both a receiving station and a processing plant, because the milk is unloaded on the platform, taken to the receiving room, sampled by a licensed tester, dumped into a tank and weighed, pumped into a pasteurizer, and pasteurized, cooled, bottled, and stored for next-morning delivery.

The commission contends that a receiving station is one where milk is received, sampled, tested, and cooled for reshipment to a city market at some distance, but not where pasteurizing or other processing and bottling takes place. This was the testimony in substance of two witnesses, employes of the commission, which corresponds to the definition of a receiving station contained in order A-79 promulgated after the period in question here.

We cannot agree with the commission's contention. While there is apparently no law on the subject, logic and reason support the appellant's position. To say that a plant where milk is received is not a receiving station is a contradiction in terms. Apparently the commission would concede that had appellant's pasteurization and bottling operations taken place at a distance (say near City Hall) he would be entitled to the differential. We cannot see why he should be deprived of it because he saw fit to establish facilities for all operations at one point. True the separation of receiving and processing by distance requires an extra handling of the milk entailing added expense, but on the other hand appellant must carry his product into the city in bottles rather than in bulk, admittedly a more expensive operation. The differential in price

is allowed because the milk must be transported a distance to the place of sale; whether it is transported in bottles or in bulk it must cover the distance for which the differential is allowed.

Further, appellant's good faith is attested by the fact that he did not take the full credit that is allowable to a receiving station in the same mileage zone.

The commission further contends that appellant's plant cannot be considered and was not considered by the commission as a receiving station, because all known receiving stations at the time order A-29 was promulgated were listed in schedule A of section 3 thereof. That conclusion does not follow, however, as will be disclosed by a mere reading of the relevant portion of that section as follows:

"The minimum prices for Class 1 and Class 2 milk, to be paid producers or a group of producers who deliver milk to a milk dealer at a country receiving station listed in Schedule A below for resale in Area No. 1, shall be f. o. b., such station as set forth in said schedule; *where such milk is delivered at receiving station not listed below and located twenty-five miles or more from City Hall, Philadelphia, the minimum prices shall be f. o. b. for each such receiving station according to the zone in which located* . . ." (italics supplied).

The use of such language clearly demonstrates that the commission contemplates the existence and operation of receiving stations other than those specified in schedule A.

Finally, it was affirmatively shown by appellant that for a number of years prior to the period here involved other dealers operating plants comparable in operation and location to the appellant's had taken deductions from the minimum prices in proportion to their distance from City Hall. This practice was known to and received at least the tacit approval of the commission.

We are well aware of the rule that this court should not disturb a proper finding of fact by the commission

if supported by competent evidence. An examination of the record discloses that of eight findings of fact six are devoted to a recital of the history of the application for the license and the subsequent proceedings. Finding of fact 5 we deem not a true finding but a conclusion of fact that there was a failure to account and pay for milk purchased. No. 8 is an elaboration of that conclusion. In its findings the commission has ignored the fundamental issue of fact, whether or not appellant conducted a receiving station. If that fact is found negatively, then the conclusion of fact follows that appellant was guilty of underpayment; if found affirmatively, and we cannot conscientiously find otherwise, there has been no underpayment.

Findings of fact 5 and 8 are based upon the legal conclusion that appellant's establishment is not a receiving station, and with that conclusion of law we cannot agree.

In view of the foregoing, we are of the opinion that the appeal should be sustained. It should be pointed out that inasmuch as the license year involved in this appeal has expired the question is really moot, but a determination thereof is necessary because of possible questions of liability on appellant's bond.

And now, August 21, 1944, for the foregoing reasons, the appeal is sustained and the order of the Pennsylvania Milk Control Commission dated July 16, 1942, as amended May 3, 1944, in which the commission refused a license to appellant for the year May 1, 1942, to April 30, 1943, inclusive, is hereby overruled and set aside.