## Milk Control Commission v. Friday's Dairy

Before Marshall, Alpern and Cercone, JJ.

*John Patrick O'Shea, Jr.,* Assistant Attorney General, for plaintiff.

*James T. Mohan* and *Edward C. First, Jr.,* for defendants.

ALPERN, J., November 26, 1958.—This is an appeal by petitioner, National Union Indemnity Company, from a special order of the Milk Control Commission of the Commonwealth of Pennsylvania, hereinafter referred to as the Commission, which decreed:

"1. That the right of the above named defendant to apply for a milk dealer's license for the year May 1, 1957 to April 30, 1958, inclusive, be, and hereby is, revoked.

"2. That the bonds filed by the defendant milk dealer with the Pennsylvania Milk Control Commission for the license year May 1, 1955 to April 30, 1956, and May 1, 1956 to April 30, 1957, be forfeited according to law.

"3. That a certified copy of this Order be served upon the defendant, according to law, and that the original Order in this matter and a statement in writing of the Findings of Fact in support thereof, be filed in the offices of this Commission. . . ."

The facts, which are not in dispute, may be summarized as follows: In April 1955, Theodore G. Evans, trading as Friday's Dairy, applied to the Milk Control Commission for a license to operate as a milk dealer

in Lawrence County, for the licensing year May 1, 1955, to April 30, 1956. In accordance with section 501 of the Milk Control Law of April 28, 1937, P. L. 417, a bond in the amount of $5,113.44, executed to the Commonwealth of Pennsylvania as obligee by Mr. Evans as principal and petitioner as corporate surety, accompanied the dealer's application. This bond, as in the case of all bonds filed with the commission, was conditioned for the payment by the milk dealer of all amounts due under the Milk Control Law for milk purchased from producers by the dealer during the ensuing license year.

In August 1955, subsequent to the issuance of the license applied for and granted, William G. Britner, the marketing supervisor for the commission in northwestern Pennsylvania, received complaints from some of Mr. Evans' producers relative to delinquent payments. Complaints were also made concerning nonpayment of notes given by Mr. Evans to the producers as evidence of his indebtedness.

After conferring with the dealer and satisfying himself that the dealer was delinquent, Mr. Britner recommended that the dealer pay what he could on the notes outstanding, give new notes for the balance then remaining and pay his current milk account to his producers. Mr. Britner at this time also suggested that the dealer issue checks to the producers for the full amount of the delinquencies existing as of August 24, 1954, have the producers endorse the checks and return them to Mr. Evans with the understanding that they were not to be cashed.

As a result of this conference, and with the apparent consent of the producers involved, the dealer executed judgment notes on August 25, 1955, to four of his producers in the sums of $916.41, $1,027.22, $1,613.26 and $897.48. Contemporaneous therewith, the dealer

drew checks to these producers in like amounts, had the producers endorse the same and return them to him immediately. The parties to this arrangement fully understood that neither the notes nor checks were intended to or actually would constitute payment of the delinquencies.

One of the purposes of this arrangement was to make it appear to the commission that the dealer was not delinquent and thereby enable defendant to continue operating as a milk dealer. Mr. Britner and the dealer temporarily succeeded in their objective, for on August 29, 1955, an examiner of the commission, under Mr. Britner's jurisdiction and after an audit of defendant's books, reported to the commission at Harrisburg that canceled checks were seen and producers paid. Although the checks in question, covering June and July 1955, milk shipments to defendant, had not in fact been canceled, this examiner apparently assumed payment and reported that he had seen canceled checks, solely upon the presentation and observation of the checks that had never been deposited. Mr. Britner testified that he personally never investigated again to see whether these delinquencies had been paid until sometime in May 1957. Moreover, from August 1955, until May 1957, Mr. Britner never notified the commission or his immediate superior of the June and July delinquencies and he compounded his misconduct by submitting reports to Harrisburg each month during this period showing the accounts were paid from month to month.

On October 31, 1955, two of the four producers entered judgments on their respective notes. The third did likewise on May 15, 1957. The fourth producer never entered judgment on his note.

In April 1956, Mr. Evans filed an application for a license for the 1956-1957 license year and posted with

the commission a corporate surety bond, on a form identical to the 1955-1956 bond, on which petitioner again appeared as surety for the sum of $6,222.45.

Toward the close of this license year, in March and April 1957, Mr. Evans purchased from the Erie-Crawford Dairy Co-operative Association, a producer within the meaning of the law, milk having a total value of $6,336.58. Shortly after May 1, 1957, Mr. Evans sold his milk business and discontinued operating as a milk dealer, owing the cooperative for the value of the March and April milk referred to above. In May 1957, the commission was notified for the first time of the June-July 1955 and the March-April 1957 delinquencies. Approximately one month thereafter, on June 17, 1957, the commission issued a citation against the dealer and sent notice to petitioner surety to show cause why it should not suspend or revoke the milk dealer defendant's right to apply for a license for the year May 1, 1957, to April 30, 1958, because of the foregoing delinquencies.

Within the 20-day period provided in section 902 of the Milk Control Law the surety filed this appeal from the commission's order, set out herein, supra.

Petitioner complains of the order of the commission which purports to forfeit the bonds upon which it is surety for the license years 1955-56 and 1956-57. Petitioner also complains that the commission failed to find that whatever is due on the bonds by Mr. Evans, petitioner as surety has no liability on either bond for any amount.

It is the position of petitioner with respect to the first complaint that the powers of the commission under sections 509 and 510 of the Milk Control Law of April 28, 1937, P. L. 417, 331 PS §700j-509, are limited to ordering the revocation of Mr. Evans' right to apply for a license and to a finding of the amount due under

such bond. As set out in petitioner's brief on page 6: "If the Commission desires, on behalf of producers, to realize on the bond or to do anything further with respect thereto, it must commence an action on the bond as statutory agent for the producers in the same way as any person desiring to recover a debt." If the commission were to decide or adjudicate the rights and defenses of petitioner in a proceeding before it, contends petitioner, its right to a trial by jury guaranteed by the Constitution would be violated.

The answer of respondent is that the commission's order does not forfeit either bond and even if it did petitioner waived its right to a trial by jury by appealing to the court directly from the commission's order. In respondent's opinion, as is set out in its brief, petitioner could have raised the very question presented in this appeal by an affidavit of defense after the commission instituted suit on the bond and thus receive the trial by jury which it now requests.

It is thus manifest that this court cannot decide petitioner's liability on the bonds filed with the commission if in its opinion the order of the commission purported to forfeit the bonds and said forfeiture, if affirmed, would deprive petitioner of its constitutional right to a trial by jury.

We come then first to the question of whether the order of the commission purported to work a forfeiture of petitioner's bonds. It is the argument of respondent that the commission never intended a forfeiture and its order, if not appealed, would not have that result since the phrase "according to law" was annexed to the order. See paragraph 2 of commisson's order set out herein, supra. This court is unable to perceive how said phrase qualifies the order in any manner. It is presumed that any proper action taken by the commission would be "according to law" and therefore

such phraseology constituted surplusage only. Under the specific terms of the Milk Control Law, sec. 510, as interpreted by the case of Devlin v. Milk Control Commission of Pennsylvania, 154 Pa. Superior Ct. 419, affirmed by the Supreme Court at 352 Pa. 204, the commission has the power only to find the specific sums due by the milk dealer to the producers. Therefore, a *forfeiture* "according to law," even if given the interpretation asked by respondent, would be an inherent contradiction. Certainly, that was not the intent of the commission.

We pass now to the question of whether petitioner is deprived of its constitutional right to a trial by jury guaranteed by article I, sec. 6, of the Constitution of the Commonwealth of Pennsylvania, if this court, on appeal, decides the liability of petitioner on said bonds.

We wholly agree with the statement of petitioner's position set out in respondent's brief. "Apparently because it (petitioner) contended that there was no liability on either bond and was of the opinion that the failure to appeal might preclude it from raising this defense it elected to appeal directly from the Commission's Order." Petitioner was obviously on the horns of a legal delemma as a result of inaccurate wording by the commission of its order. If it elected not to appeal within 20 days (Section 902), the order forfeiting its bonds might stand even though on its face invalid. On the other hand, an appeal might result in its being confronted with the proposition respondent seeks to have us affirm, to wit, since petitioner voluntarily adopted the appeal method, it cannot now claim deprivation of a trial by jury. Petitioner chose the course best calculated to safeguard its rights.

In the case of Commonwealth v. Ziegler Dairy Company, 139 Pa. Superior Ct. 224, the dairy company was prevented from raising the question of whether a general order of the Milk Control Commission was le-

gally promulgated because of its failure to appeal the order within the 20-day period required by the Milk Control Board Law of April 30, 1935, P. L. 96 (now repealed). The court said, at pages 235, 236:

"If deemed improper, an appeal could have been taken by appellant to the Court of Common Pleas of Dauphin County and the erroneous action of the board would have been corrected and the record sent back to the board to have all the evidence considered placed in the record and opportunity given for cross-examining the witnesses with respect to it. Not having availed itself of the remedy furnished by the statute, . . . the error of the board cannot now be pleaded as a defense to a proceeding brought to enforce the penalty for violating the order."

The court is not unaware of the delay caused by remitting the order to the commission with direction to delete paragraph 2. However, mere delay will not deter this court from rendering a just decision.

For the reasons above stated, it is the opinion of the court that paragraph 2 of the commission's order purports to forfeit the bonds of petitioner and that an adjudication of the rights and defenses of petitioner on said bonds at this point would, in effect, deprive it of its right to a trial by jury. Since paragraph 1 of the order is completely independent from paragraph 2, the decision of the commission revoking the right of the dealer, Mr. Evans, to apply for a milk dealer's license for the year May 1, 1957, to April 30, 1958, inclusive, shall stand.

If the commission wishes to adjudicate petitioner's liability on the bonds, it should bring an action in assumpsit against petitioner in accord with the provisions of the act.

### Order

And now, to wit, November 26, 1958, it is hereby ordered, adjudged and decreed that the case of Milk

Control Commission of the Commonwealth of Pennsylvania v. Theodore G. Evans, trading as Friday's Dairy, with notice to National Union Indemnity Company, surety for said milk dealer, be referred back to the commission, and it is directed that the commission delete paragraph 2 of its order in said case.

Eo die, exception noted to plaintiff and bill sealed.